STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. RALPH SPAGNOLA, DEFENDANT-RESPONDENT.

Argued October 24, 1966—Decided December 19, 1966.

*Mr. Barry H. Evenchick,* Assistant Prosecutor, argued the cause for appellant (*Mr. Evenchick,* on the brief; *Mr. Brendan T. Byrne,* Prosecutor of Essex County, attorney).

*Mr. George R. Sommer* argued the cause for respondent.

The opinion of the court was delivered

PER CURIAM. The Appellate Division granted the State's application to appeal from a judgment entered on a finding of acquittal by a trial court after it had originally made a finding of guilty and after argument was had on a motion for a new trial. While the appeal was pending, we granted certification on the State's motion. The State seeks a reversal and a remand directing the trial judge to decide the motion for a

new trial and thus give the State an opportunity to submit additional testimony if a new trial is ordered.[1]

The facts are as follows. On November 21, 1963, two Newark police officers, who had a search warrant covering defendant and his car, stopped defendant as he was driving out of a parking lot in the City of Newark. On the front seat of the car the officers found a parking ticket inscribed with lottery numbers and thereupon arrested defendant, charging him with illegal possession of a lottery slip. *N. J. S.* 2A:121–3. Defendant pleaded not guilty.

On December 7 and 8, 1965, defendant was tried on the charge by a court sitting without a jury. At trial defendant denied ownership of or knowledge concerning the lottery slip and also testified that the contents of the front seat of his car were not the same when he parked the car as they were when he re-entered it to drive out of the parking lot. There was also testimony that the notations on the lottery slip were not in his handwriting.

At the conclusion of the testimony, the trial court found defendant guilty and set January 5, 1966 as the date for sentencing. On December 15, 1965, defendant filed a timely notice for a new trial (*R. R.* 3:7–11). The entire argument by defendant and the State on December 23, 1965 concerned the proof or lack of proof of defendant's knowing possession of the slip. No new evidence was referred to or suggested by either party. After argument, the trial court reserved decision.

Some ten weeks later, on March 10, 1966, the trial court advised the parties by letter that it had reconsidered the evidence, had decided to change its original finding of guilty and had decided to acquit the defendant. This made it un-

---

[1] It has been held that no "final judgment" of conviction exists until *after sentencing*. See *State v. Hintenberger*, 41 *N. J. Super.* 597, 601 (*App. Div.*), certif. denied 23 *N. J.* 57 (1956); *In re Zach*, 61 *N. J. Super.* 591, 594 (*App. Div.* 1960). Defendant Spagnola was awaiting sentencing, thus no "formal judgment" existed. Neither party contests the point that no judgment of conviction had been entered folowing the trial and the issue is not before us.

necessary to determine the motion for a new trial. Formal judgment of acquittal was entered on March 14, 1966.

We affirm, but feel that certain facets of this case require discussion for future guidance of counsel and the trial courts.

We first discuss the unfortunate noncompliance with *R. R.* 1:30–2, which provides:

"As a matter of routine, all motions heard by the trial courts in any week shall be decided at or before the opening of the court the next week. As a matter of routine, all cases submitted to trial courts shall be decided within four weeks after submission."

The importance of following the mandate of this rule is especially clear in this case. Among its purposes, the rule is designed to require the courts to decide motions and cases while the evidence and testimony are still fresh in the mind of the trial court. In the close case, the slightest nuances in the evidence may make the difference between guilt or innocence. Time—here, almost three months—may well affect the memory of any court hearing a close case. A delay in decision may leave an unfortunate feeling that perhaps the trial court was right the first time when the evidence was fresh and clear, and was wrong the second time.

■■ It is to the benefit of the court as well as the parties concerned that in all cases the trial courts strictly comply with the mandate of the rule. That the record shows no reason for the failure in this instance to comply with *R. R.* 1:30–2 should not, however, inure to the benefit of either party. The rule is one of administration and is not intended to enhance the position of any litigant.

■ We next consider the suggestion made by the State, that if it had realized that the motion for a new trial was really a motion to set aside the original determination of guilty and to enter a judgment of acquittal, at the very least it would have asked for an opportunity to bring to the trial court's attention other evidence which it might have or could obtain. Here, no such opportunity was given by the trial court. At oral argument we asked the State's attorney, who

had not tried the case, to check and inform us whether the State had other evidence to submit were we to remand the case for a new trial. Subsequently thereto, we were informed by the State that no additional testimony would be available. Under these circumstances, we find the failure of the trial court to ask the State at argument or before judgment of acquittal was entered whether it had any other evidence was not fatal to defendant's cause.

We next consider the effect of *R. R.* 3:7–11(a), which reads in pertinent part as follows:[2]

"The court may grant a new trial to a defendant if required in the interest of justice. If trial was by the court without a jury the court may vacate the judgment if entered, take additional testimony and direct the entry of a new judgment."

The State contends that this rule requires the taking of additional testimony as a prerequisite to amending the original finding of guilty. We do not so read the rule. Had the trial court asked the State whether it had additional evidence and had the State replied that it had none, under this rule the trial court could have reconsidered its original determination or could have made a new finding without the taking of testimony. And where it appears that all available evidence was produced at the trial, the trial court could, as here, make a contrary finding and enter a judgment of acquittal. Thus, a remand for a new trial would be a useless gesture as the State has no new evidence to present.

---

[2] Compare *R. R.* 4:61–1, which is the civil counterpart to *R. R.* 3:7–11(a). The rule reads, in part:

"On a motion for a new trial in an action tried without a jury, the trial judge may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment."

In 2A *Waltzinger, N. J. Practice* 93 (*Rev. ed.* 1954), we note the following comment:

"On the application for a new trial in a non-jury case the court is given broad powers under this rule to change the original result without actually having a new trial."

■ We point out, however, that ordering a judgment of acquittal after a finding of guilty in a criminal case is at odds with the general rule. Ordinarily, the practice to be followed calls for a new trial. *Cf. State v. Croland,* 31 *N. J.* 380, 384 (1960).

Affirmed.

PROCTOR, J. (dissenting). The trial judge found the defendant guilty when the evidence was still fresh in his mind. After this finding defendant moved for a new trial. The notice did not request that the court consider entering a judgment of acquittal as a matter of law. The motion was argued and submitted to the trial judge only on the question of whether a new trial should be granted. The trial judge reserved decision.

Nearly three months later the trial judge informed the parties that he had reconsidered the evidence on his own and decided to change his mind and acquit the defendant. Thus the trial judge and this Court by affirming have given the defendant more than he asked for.

Ordinarily, a reviewing court in a criminal case cannot change the judgment of the fact-finder on review of the evidence; it sets aside a verdict thought to be incorrect and orders a new trial. *State v. Menke,* 25 *N. J.* 66, 72 (1957). In unusual and limited circumstances, as where an essential element of an offense is not shown by the evidence and the State stipulates it has no other evidence, the reviewing court may order a judgment of acquittal. *State v. Croland,* 31 *N. J.* 380, 384 (1960).

If the verdict of guilty had been made by a jury on the evidence of this case, all would agree that a trial judge could not some three months later re-examine the evidence, vacate the finding, and enter a judgment of acquittal. In the interest of justice a trial judge who has sat as a fact-finder without a jury is given considerable discretion to consider new evidence without the necessity of ordering a new trial. *R. R.* 3 :7–11

(a). But implicit in this rule is the notion that a single presentation of facts merits a single conclusion by the fact-finder.

When a judge hears a case without a jury, he acts as a fact-finder along with his usual task of deciding the law to be applied. But in the absence of new evidence a judge hearing motions after a finding of fact has been made at a trial is confined to his law-deciding function. Indeed, a trial judge hearing motions after trial is acting as the first level of judicial review. The questions presented to him in this capacity are questions of law. Until and unless he is presented with new evidence, he does not have a fact-finding authority.

There is a fundamental belief in our adversary system that a finding of fact is more likely to be correct if made when the presentation of evidence is fresh in the mind of the fact-finder. With a jury this belief leads to procedures whereby the jury is sequestered during its deliberations and is not discharged until it makes its decision or reports itself unable to agree. The interests of economy and efficient administration modify this ideal when a trial judge sits as a fact-finder; he is given a more extended period in which to reach a conclusion during which he may be interrupted by other matters. However, the benefits of making findings while the evidence is fresh in his mind are furthered by a court rule. *R. R.* 1:30–2. This rule, contrary to the majority's view, is responsive to more than judicial expedience; it also reflects the belief founded on human experience that a determination of fact made promptly will more likely be correct than one which is delayed. And the public has a strong interest in seeing that fact-finding in criminal matters is made as nearly accurate as fallible human beings can achieve.

The procedure followed by the trial judge here ignores any distinction between his role as fact-finder and that of law-decider; and—as the majority opinion recognizes—it introduces the doubts which human experience suggests when a finding of fact is made after an extended delay, a finding here particularly suggestive of inaccuracy because it contradicts the original determination made when the evidence was fresh.

I believe that the substantial rights of the defendant would be fully protected by the grant of a new trial which the trial judge can order in his law-deciding capacity. No one can say with certainty that this new trial would be a "useless gesture": the same witnesses may create different impressions, and questions of credibility—here crucial to the determination —may convince the fact-finder in accordance with the first impression of the trial judge.

I would reverse and remand for a new trial.

Justice HALL joins in this dissent.

*For affirmance* — Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, SCHETTINO and HANEMAN — 5.

*For reversal* — Justices PROCTOR and HALL — 2.